Good afternoon. Illinois Appellate Court, First District Court is now in session. The First Division, the Honorable Justice Michael B. Hyman presiding, case number 21-0833, Heather Williams v. Robert Sylvester Kelly. Good afternoon. My name is Justice Michael Hyman. With me is Justice Carol Anthony Walker and Justice Mary Ellen Coghlan. We are going to conduct the rebuttal. I will interrupt you probably in asking questions. If you would finish whatever you're saying and then respond to the questions, we'd appreciate it. Each side has 20 minutes. When you introduce yourself, the appellant, will you please indicate how many minutes you wish for rebuttal? Good afternoon, Justices, and good afternoon, Counsel. I am Mark Zito, Counsel for Defendant Appellant Robert Sylvester Kelly, and I would like to introduce myself. Mr. Deutschman? Good afternoon. My name is Jeff Deutschman. I represent the appellee in this case. We'll probably be taking anywhere between 10 and 15 minutes for our argument. You get 20 minutes. Thank you. Any questions before we begin? Hearing none, Mr. Zito? Thank you, Your Honor. May it please the Court? In this appeal, Mr. Kelly sets forth three issues for the Court's consideration. Ms. Williams only addresses one of those issues in her brief, which is whether the trial court abused its discretion in denying the petition where it pleaded sufficient facts to grant Mr. Kelly relief under Section 214.01. The two issues Ms. Williams fails to address in her brief are, one, whether the trial court abused its discretion when it failed to use its equitable powers to prevent unjust enforcement of the default judgment by granting the petition, and two, whether the trial court committed reversible error when it failed to. Mr. Zito, do you agree that the only standard of review that applies to all the issues in this case is abusive discretion? No, I don't, Justice Walker. I believe that it's abusive discretion for one of the issues, the one that Ms. Williams responded to, and then the other issue with respect to the court using its equitable powers to prevent the unjust enforcement. The other one is reversible error. I don't believe that that is abusive discretion standard. I believe that's de novo. Thank you. So the two issues that Ms. Williams did not respond to has the effect of conceding them, according to the court in Vukucic versus Comprehensive Accounting Corporation. As the court employee V. Pariani of First District Court stated, when an appellee does not address arguments in her brief, her position... We know what the law is on that issue. Why are those arguments even relevant here? Well, I didn't know if they would be, Your Honor. I was hoping... Well, I'm asking you. Why do you believe they're relevant? I was only trying to point out to the court that I believe that they have been conceded. The court does have... Conceded or not, my question is, tell me the relevance of those two issues to this appeal. The relevance of those two issues to this appeal? Yes. Given the fact that they were not responded to or just given... Whatever argument, why... I mean, let's assume that we'll find out what they say, but we've read the briefs and we've read the record. So with regard to those two arguments, whether they're conceded or not, you're saying those are relevant. Those are something we need to decide, right? And why do we need to decide those? Why does that have anything to do with this appeal of the 1401 denial? Your Honor, there are two reasons for that, Your Honor. The first one is we believe that under heirloom, the court should have, in this case, used its equitable powers to not enforce the judgment by granting the petition, not allowing the enforcement. Why should it use the equitable... I mean, that argument is one that's rarely ever considered by courts. As you know, it's extraordinary circumstances, right? I don't understand. Why would this be extraordinary? What's extraordinary about it? Well, I think the fact that Mr. Kelly was incarcerated at the scene... That happens. That's not extraordinary. People do get incarcerated frequently and have cases in court. That's not an excuse. And Your Honor, I don't disagree with that at all. I think that the extraordinary circumstances of the pandemic, though, caused the situation at the MCC to be different than it I don't... I'm just following that logic. Every case of somebody who was in the federal jail would be able to make that argument. That's what you're telling us? I mean, if we came down and agreed with you, we'd be opening the floodgates to anybody who was incarcerated during the period of the COVID actions closing the courts. Well, I do think that that, depending on the certain factual circumstances surrounding the entry of their judgments, they may have that argument as well, Your Honor. But how do we differentiate? You're saying it's extraordinary because of COVID. And here, we know he knew about what was going on. He received copies. And he has also, he knows he has a responsibility on his own to check with what's going on. And, you know, 11 months passed. A lot of things happened here that had nothing to do with Mr. Kelly being incarcerated. Well, Your Honor, I don't disagree that certainly there were mistakes by counsel and everything else. But as I'm sure you're, as I know you're aware, the Air Room case does say that the court should prevent an unjust, you know, enforcement of a default judgment here. This was a default judgment that was entered right as the pandemic blew up. So are you saying that any time a judgment was entered right before the pandemic blew up, that that becomes extraordinary? I mean, I'm trying to, why, you know, I'm trying to get to the crux of why this would be extraordinary. I mean, that's above and beyond the normal. Because what we do here is an appellate court does have an effect on how others would respond with these circumstances that you've raised. On the specific facts of this case, his counsel, you know, Mr. Kelly had been defending against the case until his counsel withdrew on January 28th. And counsel did not send, I'm sorry, an order was never sent. Let me interrupt you right there. How does your argument jive with the fact that Mr. Kelly was able to get Mr. Nix to come in, be given leave to file an appearance, even more important to the facts of this case, be given leave to file a motion to vacate the default and then do nothing. So all these arguments about COVID-19 and he was, he couldn't do this and he couldn't do that. You know, I'm sympathetic to those arguments, but it didn't stop him from somehow or other getting an attorney to come in and get leave of court to vacate this default. My understanding, Your Honor, is that Mr. Greenberg, who was one of his criminal attorneys, was the one who was trying to deal with this and had dealt with Mr. Nix and Mr. Nix was going to come in as a friend and just try and provide a stopgap. But our rules of the court do not support that argument that you're making. He, as an officer of the court, was given leave to file an appearance, which he did. He was given leave to file a motion to vacate, which he didn't do. He's an attorney licensed to practice in the state of Illinois. I understand that, Your Honor. We made arguments based on the facts as we understood them in an attempt to try and get the judgment vacated. You'll note that we also made another argument was that given all these different facts, that an evidentiary hearing should have been held by the trial court. And perhaps the trial court could have flushed some of this stuff out. Why do you need an evidentiary hearing when a lawyer has been given leave to file a motion to vacate a default, which really is the heart of all the issues here, and doesn't do it? Why do you need an evidentiary hearing for that? Well, I think that we were asking for the evidentiary hearing for a number of different reasons, not just for that reason, but that there were disputed factual questions surrounding this, like with respect to whether the affirmative defense had been stricken. Because what happened here, Your Honor, was there... That's a factual issue? I mean, whether it's stricken or not? I mean, isn't that in the record? It's not a factual issue whether it was stricken. It's a factual issue whether it was stricken with prejudice. And I think if it wasn't stricken with prejudice, then it was not... That's important because if the court were to vacate this, he would be able to then reassert that affirmative defense, depending on what the reasons were. It was never stricken on the merits. But again, that goes back to the fact that there's no bystander report, there's no transcript of the hearings, which falls on your shoulders, not you particularly, I'm just saying your side. I'm not faulting you at all, please. And Your Honor, let me respond to that. The reason that we don't have a transcript of the hearing on the petition, and we laid this out, is because there never was a hearing on the petition. No, but people will appear before the judge with regard to the judge ruling on the affirmative defense. And my understanding is that an amended complaint was filed without any reference to the statute of limitations, right after, or maybe even the same day as they were before the judge, which leads one to believe that it was with prejudice. Because if it wasn't, why would somebody not do that immediately? So is there any... Again, I don't... Why do we need a hearing? A motion to reconsider was filed after that, and then it was never heard because Mr. Kelly's counsel withdrew. So the facts are, basically what happened was Abdallah Law filed a motion for leave to file an answer, and then also filed an answer, including the affirmative defense. And on that day, without a motion to strike being before the court, the court just sua sponte struck the affirmative defense, which... How do you know that? Because we know that there was no pleading filed. So it couldn't have been stricken on the merits, because there was no... Again, how do we know that without a record? I'm just... You're assuming, right? Well, I don't think I am assuming, Your Honor. If there weren't pleadings filed attacking the affirmative defense as such, I don't see how it could have been stricken on the merits. And if it wasn't stricken on the merits... Can you make an oral motion have been brought? I mean, you say sua sponte. It sounds like the judge brought it up. But, you know, that may not have been the case. It may have been, you know, nobody appeared. So it's always a dangerous thing when a lawyer... No, no, no. Somebody was in court on that day. Abdallah Law was in court on that day. Then they knew what was going on. And again, there's no transcript. So to say sua sponte, that's not something we can... How can we take account of that? Well, and Your Honor, and I don't want to argue with you. We were only responding to the arguments that counsel made in their response to our appeal, which was that we had... The only argument that was made in the response was that we needed to have a transcript of the hearing on the petition. And the court never held one. So we didn't get into any of the other things because that wasn't an argument that was brought up on appeal. I mean, I understand that the justices would like to understand that now. I haven't thought through all of it other than to say we did lay out the facts as we understood them. And this is based on the pleadings that were filed, which were that nothing was filed attacking the affirmative defense. The affirmative defense was actually filed on the same day as the hearing on which it was stricken. So we know that it wasn't responded to by a pleading. Mr. Zito, aren't these arguments more properly raised in a direct appeal? This is a situation where we're looking at a default judgment here. And all of your arguments go to the merits of what should have happened had there not been a default, perhaps. And Your Honor, wouldn't that have been... That would have been an interlocutory appeal, as I understand it. And wouldn't the interlocutory appeal have had to have been such that it wouldn't just... The facts of this case, as I understand it, would not have been enough to allow an interlocutory appeal. It would have had to have larger implications. You know, I guess that I'm having trouble understanding how counsel's failure to file a motion to vacate the default is justified and how any of your arguments really have any relevance based on that central failure to do what should have been done. And Your Honor, I think we did address that somewhat. I don't know all the reasons that it wasn't, but I can say that we did... What was your best argument on that point? Well, we argued and noted that Ms. Williams' counsel intimidated Mr. Nix and told him that he'd turn him into the ARDC if he filed it. Is that in the record? I saw that in your brief. We have an affidavit to that effect, and then it's also in the brief. The affidavit was filed along with the... The affidavit's in the record. The affidavit, yes, was filed with the reply in support of the petition because that was when we got the affidavit for that saying, well, this is why it took so long to file. Even if that's true, and I don't know what intimidation means under these circumstances. We're not talking about any kind of ARDC situation here, apparently. That's not for us to decide, but I don't see how that one has anything to do with the other. What we argued based on Mr. Nix's affidavit is that he was intimidated by Ms. Williams' counsel who threatened to report him to the ARDC if he filed anything on behalf of Mr. Kelly. I think, importantly, that was never responded to. They didn't address that. We don't have an affidavit from Ms. Williams' counsel saying that that never happened. Has that ever brought up before a court, the affidavit from Mr. Nix? No, because there was never a hearing on the petition. Right, so we don't know. All we have there, no hearing, so we don't know anything about it. We don't know anything other than that the petition was denied, so we have no idea what the findings of fact were by the trial court here. We don't know what the trial court thought. That goes back to the fact that we don't have a transcript or a bystander report. There might be a reason why Mr. Nix didn't do what he was supposed to do, but I'm still having a problem figuring out how that has any bearing on the fact that it wasn't done. Well, again, we made the argument... This is the same Mr. Nix who filed contrary affidavits in the same motion. Yes, Your Honor, and we did address that, that Mr. Nix had forgotten that he had been in court and filed two separate... He filed an appearance that day and also an order... I'm sure you can appreciate how, you know, from where someone is sitting reading these, that raises somewhat of a red flag on the issue of credibility. I don't disagree with that, Your Honor. Mr. Nix gave us the first affidavit and we filed the petition, you know, in part based on that. And then later on, when Ms. Williams responded and we realized that that was incorrect, of course, we went back to him and he said, I completely forgot about that. But, you know, I don't know anything more than that. Since I don't know what Mr. Nix was thinking. But I think that... Well, I agree with Justice Hyman and I'm sure my colleague Justice Walker. No one is faulting you, but, you know, the facts are the facts here and we can't ignore them. Yes, and I wouldn't expect the court to at all. I think that two things that we're arguing here are that with respect to all of that, Ms. Williams didn't respond to two of our issues and this court has the ability, if it wants to, to reverse on that basis alone. But that's what I was going through. And you addressed one of those two issues that we've just been discussing for quite a bit. What about the second? Why is that even relevant here? Well, the second issue, we believe, we think that an evidentiary hearing would allow the court to have explored the issues that were brought up in our reply and support, which were that Ms. Williams' counsel's intimidation tactics. Because it seems like you guys have a real question as to why Mr. Nix did not file a motion to vacate after he was given leave in March. And I think that an evidentiary hearing would have allowed the court to explore that and to explore the fact that Ms. Williams' counsel intimidated him and said he would turn him into the ARDC. But is that a basis? I mean, there isn't anything else, right? Mr. Nix says, well, I was intimidated by a lawyer, so I didn't do it. Is that something that we can, in this case, would be reversible for not holding an evidentiary hearing, the fact that a lawyer has been accused by someone whose credibility is in question with regard to a statement? Well, in the Smith v. Airroom case, what the court said was that if a petition is filed and the facts in the petition are challenged by the respondent, that the court should order an evidentiary. Was there any challenge? Yes, yes. And we lay that out in our reply brief. And then our reply in support of the petition... What was the challenge by Ms. Williams' counsel? Ms. Williams' counsel, in the petition, Mr. Kelly argued that the affirmative defense was not stricken with prejudice. And the reason for that is because Ms. Williams had never responded in any way to the affirmative defense. The affirmative defense was filed on the day of the hearing on which it was stricken. There was no time to have a filed response. And so the court struck it. And so we thought that that is a contested issue of fact. Simply on the fact that there was no hearing, and what rule are you relying on to say that there should have been a hearing? It's the Smith v. Airroom case. I know it's a case, but I'm talking about any rule. What rule says... Cases can be differentiated in various ways because of the case. But is there a rule that you're relying on or a statute? Justice Hyman, I'm not aware of a rule or a statute that says that that has to occur. What I'm relying on is Smith v. Airroom, which is the seminal case on this that says if the respondent comes back and disputes facts in the petition, the court should hold an evidentiary hearing on those things. And the court didn't do it. And so we're saying that that was reversible error. And that at a minimum, if the court's not prepared to reverse the trial court and grant the petition, that at a minimum, the court should reverse remand to have that evidentiary hearing. Any other questions at this time? Yeah, I've got a couple of questions. I guess the first thing is, Mr. Zito, generally, there's really a rule requiring a court to hold an evidentiary hearing. It's just that when the court doesn't hold an evidentiary hearing, it will impact the standard of review that may be applied by this court, because there's no need to rely upon what the trial court did if they didn't make any factual findings. But I want to get to something else here. It's clear that the court denied the 26119, right? Yes. And that issue is raised again in the 21401 petition, correct? As a meritorious defense. Correct. And the court basically takes the position that that's not a meritorious defense, because the court has already ruled in the 2619 petition, correct? Correct. So where does that leave us now? Because the way I see it is that perhaps the issue regarding the court's 2619 ruling is still before this court, because if this court doesn't review that issue now, when is that issue ever reviewed? So I want to hear your response to that. Well, and Your Honor, I believe a motion to reconsider was filed on that issue like later on, but then counsel withdrew, and that's what we're arguing is that Mr. Kelly was unable to get counsel in there to deal with this. And so the judgment was entered in between. So the judgment was... And I agree with you, but that has nothing to do with what I'm saying, because the denial of a 2619 petition, as you stated earlier, is not appealable anyway. The granting of that petition would be appealable. So in this case, it's not appealable. So that issue still remains, and that's an issue before this court right now. So I want to hear your response to that. I think what you're asking me is you want to hear my response. You want me to explain... Respond to my comment that that's an issue before this court right now. Yes, I think it is, because it was never adjudicated. The motion to reconsider was never adjudicated. Okay. And also, we realized that that was not an appealable order, and then you did raise it again in your 214-01 petition. Basically, you're arguing the same thing. The statute of limitations is an issue here in this case. Is that correct? Yes. Well, as part of the 214-01 petition, as Your Honor knows, you need to set forth a meritorious defense. And so we set forth what we believe is a meritorious defense based on the statute of limitations. Right, but the... Appley is arguing that's one of their arguments, is that you did not raise a meritorious defense. And they're using circular argument, in my opinion, by saying that you can't raise it, because it's already been denied by the trial court. Right. And what we are saying is that procedurally, what happened was they raised... Abdallah Law raised the issue of the statute of limitations in a motion, in the 216-19.1 motion to dismiss, which the court then denied. Then there was a motion to reconsider that pending, I believe. But what happened was, in the meantime, a motion... That motion to reconsider was actually filed later, after the affirmative defense was filed along with the answer. And then the court struck that. But that was not... But the affirmative defense was not stricken... because of a motion to strike it. It was just stricken by the court. It couldn't have been stricken by any motion, because there was no motion before the court when it was stricken. And so, from a procedural standpoint, I think what we were trying to say, Your Honor, is that they never responded substantively to the statute of limitations argument that we made in the petition at all. All they said was, it doesn't matter, because it was stricken with prejudice. They don't actually make any argument substantively with respect to whether or not we were correct. And you were asked earlier about the court... At that moment, you were referring to the trial court, not using its equitable powers. And I assume your argument is that that same issue of whether or not this court chooses to use equitable powers. But we're talking about a situation here where we all agree that, generally speaking, our Supreme Court prefers that cases be decided on the merits, rather than through some form of default, especially where a party is involved or at least attempting to be involved. This is a situation where Mr. Kelly was incarcerated at the time. Is that correct? Yes. And at the time, this was also the height of the pandemic. Is that correct? Yes. Well, it's right at the beginning of the pandemic, but there was, as everybody knows, there was... It's more so things were even closed down more so at the beginning, because no one knew where we were going or what was going on. And then, also, this is a situation where the Abdullah Law Firm, when they withdrew, it's my understanding, they never even sent Mr. Kelly a copy of the petition. Is that correct? They never sent Mr. Kelly... Oh, I'm sorry, of the order showing that they had withdrawn. Yes, Justice. What happened was they had been in touch with Mr. Nix, who advised them that he was going to file an appearance to appear at the February 25th... Yeah, but that's besides the point. That's besides the point. Our court rules provide that when an attorney withdraws from a case, the attorney should forward a copy of that withdrawal order to the party so that they have 21 days to get counsel. Isn't that correct? Absolutely, Your Honor. And that didn't happen in this case, is that correct? That's correct, and we acknowledge that. I'm just trying to make sure we've got the facts right as we go forward in this thing. We acknowledge that in our petition. Okay, all right. And so then, subsequent to that, Mr. Nix was working with Mr. Kelly, and it's my understanding that the only way that Mr. Kelly could communicate with his lawyers was if they were to accept a correct call from him. Is that correct? That's my understanding as well, is that civil attorneys were not able to... That no attorneys at the beginning of the pandemic were able to meet with clients. You said this was the beginning of the pandemic. I thought it was further along, but you made it clear it was the very beginning. Well, it was March 10th when the judgment was entered. So I think that they closed everything down maybe a week or two later, so completely down. And so during this time would have been the time they would have been trying to figure out what to do. But it was... Abdullah withdrew January 28th and then did not forward the order to Mr. Kelly. And then Mr. Nix didn't show up or didn't... He didn't come to the hearing or file an appearance for the February 25th hearing and then did not file an appearance until after the March 10th hearing where the default judgment was entered. And then just tell us, what are you asking us to do today? Well, what we're asking you to do is to reverse... Based on the fact that we asked for two different kinds of relief. The first one was to vacate the judgment, to reverse the trial court and vacate the judgment because Ms. Williams never responded to that argument. And then the other one was the other argument that Ms. Williams didn't respond to. The relief that we requested there was that the court find that it was reversible error and remand the case back to the trial court to hold an evidentiary hearing. So we gave the court two options under that. We felt that if the court were reversing the grant petition, that that would, in fact, to your point, allow the court to hear the case on the merits, to adjudicate it on the merits instead of on a default judgment. Your motion to reconsider. What was new in that motion to reconsider? Your Honor, I believe they just made the same arguments that they... I'm not sure that there was anything new, but... Thank you. Any other questions? Okay. You'll have your five minutes, if it works. Mr. Dwight. If it pleases the court, counsel, I represent Ms. Williams here, who was a 14-year-old abused by R. Kelly. She, in fact, is, I believe, testifying today against him. Just a second. Well, that's important. He made a factual statement that's important. Was she 14 or 16? I believe that she was 14 when she met him. And during many of those teen years, the relationship existed. Okay. Anyway, we filed suit in February of 2019. Counsel appeared on behalf of R. Kelly and litigated the case. Discovery was done. The court required... We've read the briefs and we've read the record. So, there are two arguments that, according to your opposition, you never responded to. True? I think that we do respond to it. Well, okay, then take the first one. Whether the trial court abuses discretion when it failed to use its equitable powers to prevent the unjust enrichment of the default judgment entered against Kelly, in this case, by granting the petition. Where was your argument to that? Well, first, we make two arguments, Judge. We make arguments that the trial court's order should be affirmed because there was no record of the trial court's proceedings. No, that's not my issue. You definitely... They talk about in their brief, and we just heard it in oral argument, that you did not respond. Where do you respond to that first argument? It's on page one of their reply. And we just went over with Mr. Zito again. I think we respond to it in the body of Roman numeral two of our response. Okay, and what's the response? Well, we say that the defendant appellant does not and cannot establish that he has a meritorious defense. And we go on to explain that. Is the statute of limitations a meritorious defense? Well, our argument is that she ruled on those that Judge Johnson ruled on a motion to dismiss. And the affirmative defenses were stricken. Motion to dismiss the affirmative defenses, correct? I didn't file a motion to dismiss the affirmative defense. They filed a motion to dismiss under 2619. It was briefed and argued and the judge denied it. And that was the law of the case. All right, but what about the motion to dismiss the affirmative defense? And then there was no affirmative defense raised in their medical complaint. I mean, their answer, excuse me, their answer. And their answer, I don't recall whether they filed an affirmative defense. All I know is I never responded to one because one didn't exist. And the reality is many of the pleadings were problematic that were filed by R. Kelly's lawyers. The affirmative defense that may have been filed, as I recall, didn't have any factual support. You can't just say the statute of limitations were violated. You have to plead affirmatively as a plaintiff would. And they did not do that. And counsel said the judge struck that. You know, that's not really part of the record. So anyway. So wouldn't the 2619 issue be before us at this point if the trial judge as a matter of law for all practical purposes struck that issue. It wasn't appealable at the time. So why wouldn't it be before us right now? I think the only thing before you right now is the 214-01 petition and whether or not it was properly. But in the 214-01 petition, the same issue is raised, statute of limitation. So your argument is that they can't raise that as a meritorious defense because the trial court has already decided that it's not a meritorious defense or that the trial court has already struck that. So why can't it be raised now as a meritorious defense? Because otherwise this puts us in a position where we're never able to review a trial court's decision regarding a 2619 motion. But I don't think it's the appellate court is not reviewing anything that judge Johnson did in this case. The review is just of judge. We realize that we're reviewing. We're reviewing the 214-01 and in the 214-01, there's another allegation that they have. They have a meritorious defense and that meritorious defense is a statute of limitations. Your argument is that they don't get over that hurdle. And then you come back to judge Johnson's order. Judge Johnson's order was not final and appealable. It could not be appealed until the case was resolved. Not only do they have to have a meritorious defense, but they also, in order to prevail on a 241. I understand they have to show due diligence, but we're talking about a meritorious defense right now. Don't change the subject. I'm just saying. You don't have an answer for me, that's fine, but don't change the subject. Now you can go on and move on to the due diligence. Well, Judge. Justice, more to your point, our argument is that it was ruled on by Judge Johnson. She denied it and the law of the case is set. I heard you. Now you want to move on to the next issue, I'm willing to move on. As far as due diligence, they had over a year. They only filed a 214-01 approximately a year later. In fact, my brief is incorrect. In the fact section, I think I say in September, but it was in February of 21, where Jordan and Zito filed the 214-01 petition. It was over a year later. The attorney, Nix, had filed an appearance the day I got the judgment. He didn't show at the time my client and I were in the courthouse proving the matter up. He came later. It was only after lunch, later on that afternoon, that I learned from the court that he had entered an appearance and an order had been entered ex parte. Mr. Nix is the entertainment lawyer for R. Kelly. He's been involved in lots of other litigation, both during the pandemic and prior to the pandemic, involving R. Kelly's litigated matters in Cook County. Not only did he file an appearance, but because he filed the appearance, I gave him constant notice of all of the post-judgment relief that was going on in front of Judge Hennigan that ended up before the appellate court on the issue that was pending in that case. It's been decided. Not only did Mr. Nix know about every single thing that was going on on the post-judgment relief and didn't do anything, but then when he failed to file within 30 days, I sat back because of the pandemic. I sat back and waited that 30 days. That 30-day period was during the pandemic and no one knew what was going on in March, April, and May. Then in May, the court system said they were thinking of opening up June 1. I said, I got to wait for that to happen. It still didn't open up, as you know. I waited until August of 2020 before doing anything for post-judgment relief. R. Kelly had another default judgment that was entered against him that Nix knew about and Mr. Zito was involved in trying to do a 1401 petition to vacate that, which was also denied. The fact is, Nix was along the ride for everything. The reality is, Mr. Zito at no time ever asked for an evidentiary hearing. I never had an opportunity to bring any kind of response to the second affidavit talking about this intimidation in their reply brief to my response that was in front of Judge Flannery. I never had an opportunity to respond. I never asked for an evidentiary hearing and Mr. Zito never asked for an evidentiary hearing. If he had asked for one, maybe the judge would have given him one, but he never asked for it. The fact is, this intimidation thing is all smoke and mirrors and lies because not only have I never spoken to Mr. Nix regarding this case, he never answers the phone, his secretary never gives him messages, and my only correspondence with him is in emails. None of this that you're telling us now is in the records, right? Right. We can't take account of it. I understand that. What's important is that you were before Judge Flannery, right? And that's what was before us, okay? I understand. I'm just speaking to some of the intimidation arguments that were made. Is that part of what we need to decide? It isn't. And why is it? Because all you have to decide is whether there was a meritorious defense and whether they had due diligence in their lack of both. That's the Justice Walker's question. So the only supposed or alleged affirmative defense is the statute of limitations, right? Correct. Okay. So the question boils down to, do they get a hearing on that? Is that something that we should reverse so that they have a hearing on that issue or not? I think it's already been heard by Judge Johnson. Danny, you responded to Justice Walker, and you say that that is not part of what we, under what cases or what rule or statute are you relying? I'm relying on the fact that it was the rule of the case. I don't have a specific case to cite, but the fact, Judge, is that that issue was not before the court at any time. And I think it'd be a mistake for the appellate court. I don't understand that. We just talked about the fact that they made an argument on the 1401 that they had a meritorious defense of statute of limitations. Okay. So wasn't that before Judge Flannery? I think Judge Flannery denied their motion, and when he denied it, he discounted all of the arguments they were making because the judge did not find them to be credible or to be in any way pertinent to the fact that there should be a hearing on the meritorious defense. And for the appellate court to reverse... Let me just slow down a second. If what you're saying then is then the issue might turn on a little different issue, and that is you're saying they want to have a hearing. Judge Flannery did not have a hearing, right? They never asked for a hearing, Judge. Okay, they never asked for a hearing. So for us to say that there should be a hearing now makes no sense because they never asked for it, and because we don't have a record of what happened before Judge Flannery. Is that correct? That's correct. There was an appearance before Judge Flannery. That's correct. And because at the time Judge Flannery made his decision, he could deny the motion under the law pursuant to 214.01, not just because there wasn't a meritorious defense, because there was no due diligence. You have to have both, and if you lack one, there's no reason to even talk about the other. Okay. So it's our position on behalf of the appellee that the court should deny the 214.01 response and affirm the decision of the trial court and their denial of the 214.01 petition. In their reply, it says that the trial court struck the affirmative defense sua sponte at a case management hearing after Kelly filed a motion for leave to file his answer, attaching his answer, which included the statute of limitations affirmative defense. Is that correct? It is not correct. What is correct is that the court continued motions of both parties until from the 28th. Once they filed their motion to withdraw, there was a hearing supposed to happen at that time on the 28th, but they didn't have the hearing on any of those motions. We had filed a motion for summary judgment. So not only did Judge Johnson default the defendant, she also granted my motion for summary judgment. And any other motions that were there were stricken. Any other motions were stricken. So she granted the motion for summary judgment, defaulted the defendant, struck all the other matters that were supposed to be before her had there been counsel there, and set the matter for prove up. She also, the prior week, that was on 22520. On 12820, when she granted the motion to withdraw, she entered the appropriate order, which indicated that they needed to give notice to R. Kelly pursuant to the statute. And if they didn't do it, that was just another mistake that they had made. So... Any other questions? You can finish. Judge, I'm asking for the court to affirm Judge Flannery's order denying the motion pursuant to 21401. Thank you very much for your time and attention, Justices. Mr. Zito? Just a few things. Number one, and I think the most importantly, is that we did ask for an evidentiary hearing in our reply brief. At the very end, we say if the court determines the response does not create tribal issues, this court should grant the petition as presented. If the court deems otherwise, it must conduct a full and fair evidentiary hearing to ascertain the truth. You asked it in a reply brief, right? The reply and support to our petition after their response. Because they... A reply brief. I'm saying you never moved. You're asking for the relief in a brief, first of all. Correct? Correct. Yes. So there's no motion, and it's a reply brief to which the other side doesn't get a response to. Your Honor, this is the reply to the petition. So what happened was, what Air Room said was, if the respondent contests facts in the petition, then the court should hold an evidentiary hearing. That's what Smith v. Air Room said. But did you ask, did you file a motion for evidentiary hearing and set forth why there should be an evidentiary hearing? I'm not talking about a brief. You can say a lot of things in a brief. We did not file a motion, Your Honor. We said, based on the fact that they filed a response, we cited Air Room in their response, and then we laid out, the whole reply basically was laying out all of the contested issues of fact. And then what we say is, look, we don't think that these are real, real, true issues, but if the court feels that they are, we said the court should grant our petition, but if it thinks that there are triable issues based on the fact that they've contested several issues in our petition, then the court is obliged under Air Room to have an evidentiary hearing. So we didn't file a motion asking for it, but that was part of the relief that we asked for at the end of our brief because we didn't know whether or not Ms. Williams was going to contest these issues or these facts. I'm sorry. Only then did we know. So we put it in our reply. In your reply. Right. In our reply in support of the petition. Your reply in support of the petition. Correct. Which means they don't get a chance. They responded, you replied. That's not a proper place, is it, for a motion or to make a request in a reply? Well, what we were saying to the court is... What rule or statute or if you have a case that says it and Smith is not that case. What the Smith case says if the facts... I said Smith's not that case. That wasn't the situation in this reply brief. You're saying, I mean, what you're saying would change is my understanding of the whole Civil Procedure Act. Isn't it? I mean, tell me, where in the Civil Procedure Act does it say that that's an appropriate way to ask for a hearing? Your Honor, I don't know. My understanding of what would happen here is that if we had... What we claimed in our reply is that we had set forth facts to entitle us to relief under the statute. And then they responded and challenged those facts. And so what we said then in our reply brief was, well, this court needs to have an evidentiary hearing now. The court said no because it didn't have an evidentiary hearing. We don't have a transcript. The court denied the motion. So we know what the answer is. The answer is no. On the other hand, the answer is no. But the court didn't have a hearing at all. It didn't have a hearing. You asked for a hearing. What right do you have to have a hearing? Again, it was never briefed. It wasn't something that the other side was able to respond to. It's in the reply. It's, you know, it's kind of like you're saying, gotcha, because we put it in a reply. They have to have a hearing. Am I wrong? Well, I don't know, Your Honor. We, the way that we looked at this is that we filed, we filed a petition that we thought set forth sufficient facts to grant us relief. They filed a challenge to those facts. And then we said, okay, we got to have a hearing. And the court not only didn't have an evidentiary hearing, it didn't have a hearing at all. It didn't have a hearing explaining its rationale. I asked you the question before. You said there's no rule. Do you know of anything you could point to? I'm not aware of a rule. Right. Okay. The other thing, I just wanted to clean up a few things. The complaint, the Ms. Williams complaint says that she was 17 at the time of the abuse and that it, and then of course, when she attains majority, it doesn't, it's not, you know, it's not the alleged abuse anymore. And then the other thing with respect to the affirmative defense, the affirmative defense was filed the same day as the court struck the affirmative defense and no pleadings were filed in response to that affirmative defense. And so what happened was after the hearing, the same day again, Abdullah Law filed an answer not include, it did not include the affirmative defense because the court had stricken it. And so that was the, that was the timeline of what happened. It must've been with prejudice if they didn't include it. Your honor, we don't believe it was with prejudice because... Why would they include it in order to preserve it? Isn't that the rule? Your honor, we don't believe, we believe that because it was not stricken pursuant to a motion to strike or any, or any kind of response to it whatsoever that it wasn't stricken with prejudice. And we cite case law... Where in the rules does it say that if there's no response to the court must have a hearing or can't enter an order? Is that, that's not, you're not saying that that's the law? I'm not saying that that's the law. So there doesn't have to be. And it doesn't even have to be a motion. Can't, oral motions are made all the time. Well, I think after the court struck it, they felt like they couldn't include it again. However they thought, you know, sometimes you have to do what you have to do. I understand, Your Honor. The other thing that I was going to say is with respect to the bystanders report, I want to make it clear to the court that we only responded, we responded to the idea that there, we set forth three issues and what happened was in, in her response, in her appellate response brief, Ms. Williams brought up a new issue. She didn't respond to two of our issues and instead brought up a new issue that said we should have filed a bystanders report or a report of proceedings or an agreed statement of facts, which we tried to get with respect, only with respect to the hearing on the petition. But there was no hearing on the petition. So there was no way to do that. And so we only in, in our briefs only address that we didn't address anything else because that was the, that was the, the question that they presented in their, in their issues. And so we didn't, we didn't go beyond that for obvious reasons. The other thing is, is that with respect to due diligence, and this is the last point I would make, is that, you know, the air room court says that because you know, we cited, we have this in our brief, in our, in our petition that says a guiding principle in the administration of section 214, a one relief is that the petition invokes the equitable powers of the court, which should prevent enforcement of default judgment when it would be unfair, unjust, or unconscionable. And then we set forth facts that we believed that that to be the case. And then the court also says because of 214.01 petition is addressed to those actual powers. Courts have not considered themselves strictly bound by precedent and where justice and good conscience may require it. A default judgment may be vacated even though the requirement of due diligence has not been satisfied. And so what we, what we were trying to say is, look, we've set forth the meritorious defense in detail here. And then if, if the court were to find that there wasn't due diligence, equity should prevail here and the court should grant petition anyway. And so that was, that was the issue that we put in our, in our appellate brief that Ms. Williams never responded to. That was the first issue. And then of course, the second one was that the court should have held an evidentiary hearing. And Ms. Williams declined to respond to either one of those issues in any way, shape or form. And so that's, that's where I would like to end because I think that cleans up any responses that I had to Mr. Deutschman. So, and I would thank the court for your time and for, and for listening to us today. Well, you gave us a lot to think about. Both of you did an excellent job. Your oral arguments answered our questions. It wasn't easy. I understand. So, please enjoy the afternoon. We'll take the case under advisement and we'll be ruling in the future.